15-2393 Lonnie Wiseman v. Patti Wachendorf, et al. Ms. Quick, we'll hear from you first. May I please report? This case requires this court to decide issues relating to federalism and comity, specifically whether a state has waived primary jurisdiction. Looking to the relevant factors here, Arkansas waived primary jurisdiction of Mr. Wiseman. Therefore, under section 3585A, Mr. Wiseman's federal sentence began to run when he was transferred to BOP custody in September of 1997, and has continued to run since. This court must reverse the denial of Mr. Wiseman's 2241 petition. Alternatively, this court should reverse the denial of appointed counsel and remand for further proceedings. Now, before getting into the nitty-gritty of the primary jurisdiction issue, the parties dispute the standard of review. The standard of review is for factual findings, clear error, and for the question of primary jurisdiction, de novo. The U.S. bank decision didn't say that all mixed questions of fact and law are now reviewed for clear error. If it is primarily a legal question, it is still reviewed de novo. And goal involved, this court said, primary custody is primarily a legal question, so therefore review is de novo. But our position is that no matter the standards of review, circumstances indicate that Arkansas waived primary jurisdiction. The biggest indicator on the record here is that 1997 letter from the Bureau of Prisons. In that letter, the BOP doesn't state Arkansas called and said he was released by mistake. It does not mention that there was a writ of habeas corpus. Instead, this 1997 letter frankly just seems frustrated with the fact that Arkansas released Mr. Wiseman to federal authorities without any writ or any kind of requirement that he be returned. And because there's a presumption that these officers will act lawfully and properly, this court must presume that when Arkansas released him, they did so intentionally. And this is all inherent or shows an inherent weakness in the government's argument, in this case, even on appeal. And that their argument is that the BOP said that they don't have primary jurisdiction, so they don't. But that's not how the issue is analyzed and how it's determined. Instead, the question is what Arkansas did and what Arkansas intended. Based on this letter and the remaining factors I will discuss, they waived primary jurisdiction. Does the record tell us anything about what Arkansas intended from the Rule 40 hearing? And is there anything in the record, maybe the docket sheet, that would indicate that? So there's nothing more specific except the fact that a Rule 40 hearing was held and that he was remanded to the custody of the U.S. Marshals. But the fact also is, what I'll get into now, is you only have a Rule 40 hearing if there's no writ. If there's a writ, if he was brought up on a writ from Arkansas, there would be absolutely no point to have a Rule 40 hearing. And this is really, as far as I can tell, the only factual dispute of the parties. And it's our position or my position on appeal that there is no writ. There's no writ in the file. If there was a writ, it would have been filed. It would show up either on that Arkansas docket sheet, it would show up on the Idaho docket sheet. There's no writ to be found. The 1997 letter doesn't mention it. And again, there was a Rule 40 hearing. Any mention of a writ that I can find in the record seems to be added after the fact. The only indication of a writ I see, besides this affidavit that was provided for this litigation, was the U.S. Marshal form where it indicates, as far as I can tell, that it's the acronym for writ of habeas corpus. But that was added on October 1997. And this was after the BOP tried to unilaterally decide that Arkansas still had primary jurisdiction. And it's our position, if the government wants to put forward and have the court rely on a factual finding that there was a writ, that they should have to produce it. This isn't a question of credibility, it's not a question of believability, anything like that. It either exists or it doesn't. And the Tenth Circuit did exactly that under very similar circumstances. Said if the government was going to state that there was a writ, they need to produce it. And they haven't, as far as I can tell, or anything I see in this file, produced it. Now, beyond the absence of a writ... What do we do with the fact that the plaintiff, as I understand it, alleged that there was a writ when he was proceeding a pro se? So he cited case law to indicate that this kind of pro se concessions that are clearly wrong shouldn't be held against a pro se litigant. And the government tries to make a distinction in the case we cited, the Knox case. Well, that was just a wrong legal concession. And here this is a factual concession. I don't see any kind of material distinction for that. The government doesn't provide one. Especially when this is the circumstance of whether a legal pleading was filed and existed. It either does or it doesn't. So it's almost more similar to, in some ways, a legal concession. Because it's either correct or it isn't. So it's our position that it shouldn't be held against him under the case law. Especially when, from what I can tell, and of course I'm looking at it after the fact, it appears to be wrong because the BOP tried to add it after the fact. In that U.S. Marshall form. So it shouldn't be held against him. What is the Marshall form that you're referring to? What page of the appendix? So that is on page 31 of the appendix. And I had never seen one of these forms before. We usually don't have access to it. But it's kind of the internal document that the U.S. Marshalls use when they're transferring people. And it talks about security and things like that. But that's the only indication I've seen, I see in this appendix, or that was in the file, of a writ of habeas corpus. Besides the fact that they were trying to state that there was one after the fact. What about, what would we do with the BOP affidavit? Was it clear error to rely on the affidavit of Teeters? Yes, Your Honor, it was. And I think it's clear that it was clear error because Ms. Teeters doesn't just say it. She says it and then she cites two parts of the record for support that there's a writ or no writ exists. So we know, you know, she's not saying, I looked in this file, I found it, there's a writ. She's saying my review, because my understanding of individuals like Ms. Teeters when they come into these kinds of cases is they review the file. And she's saying I've reviewed the file, here's where I've reviewed it and there's a writ. But except where she points to, there is no writ. And alternatively, if this court is concerned maybe with some concessions, I really think that's where reversal to allow Mr. Wiseman to pursue his claims with appointed counsel could come in. Because it just highlights the difficulty that he had without appointed counsel to be able to investigate these claims and look at these factual assertions that were made. Because this was a very complex record and has complex legal issues as well. So because the United States is the primary jurisdiction, the sentence began to run when he was transferred to BOP custody in September of 1997 and has continued to run since. There's really two principles that support this assertion and they all kind of boil down to fundamental fairness. One is that a defendant shouldn't be required to serve a sentence in installments. And the other is that there's a need for certainty for both defendants, judges, and all the individuals involved just in this process. Now the defendant's not asking for a windfall. The government cites these cases where, you know, it truly was a mistake. They're transferred and they're trying to say, gotcha, my time's starting to run. Looking at this record, it truly harmed Mr. Wiseman. One thing I didn't point out is it's obvious that the New Mexico judge who was sentencing him indicated that he thought the sentence began to run that date. And even looking at what I didn't point out in the brief, the New Mexico PSR on page 99 of the appendix, it appears to indicate that he was already in custody on this charge and receiving credit. And I think it indicated he had served 300-something odd dates. So because there was no writ, because that's the assumption his attorney and the judge were operating under, there's no discussion of concurrent versus consecutive. And this does extend his time. Because based on what Arkansas did, they wanted to waive primary jurisdiction. So it is harming Mr. Wiseman. Which is why the BOP shouldn't be able to come back after the fact and say, no, we think Arkansas didn't waive. If there are no further questions, I'd reserve the remainder of my time for rebuttal. Do you have a record citation handy for that 1997 letter? I do. It's 188-89 of the appendix. Thank you. Mr. Westphal, we'll hear from you. Thank you. May it please the court. In September of 1995, Mr. Wiseman escaped from state custody with a federal prisoner and went on a very violent robbery crime spree. At that point in time, he already had one prior armed robbery conviction. He had outstanding warrants for robberies on five other separate cases prior to 1995. And two pending cases in states, in five different states. And after being undeterred by that and his pending state sentence, and emboldened by his escape, he went on to commit another six robberies in New Mexico. And one in Arkansas where he was arrested on November 29, 1995. Important because on that date, the state of Arkansas obtained primary jurisdiction over Mr. Wiseman. They sentenced him on that state robbery charge on April 9, 1996 and imposed a 30-year sentence. And it was after that where he was prosecuted both in Idaho, federal court in Idaho and New Mexico on these federal charges. And when in September of 1997, the federal judge in New Mexico imposed a 595-month sentence, which was later amended to 535 months. And was silent as to whether or not that ran concurrent. And I think his mention of how old he would be when he got out, it's a pretty big leap to make that some type of discussion about running in concurrent. But when he imposed that sentence, running consecutive to the 30 years in Arkansas, this was a time and a sentence well-earned by the violent crime spree. Counsel, let me just ask you straight out. Did the state of Arkansas issue a writ of habeas corpus prosecutum? Well, that is a question that was not raised in the lower court, and there is not that actual document in the record. So shouldn't this court do as the Tenth Circuit did in Weeks v. Fleming and demand its production? No, that is not what the government is proposing. The record in front of the district court in front of Judge Epner was very clear. Both Mr. Wiseman in a petition that he affirmed under penalty of perjury and the affidavit filed by the BOP both acknowledged that there was in fact a writ, a habeas corpus writ of ad prosecutum. But the BOP affidavit cites an exhibit that doesn't include it, and I don't know how the pro se plaintiff would be in a position to know one way or the other.  Well, first, the government is proposing that that fact, whether or not there is a writ, is subject to clear or review. What Robin Teeters is looking at, the docket, she sees a docket that has an arrest warrant and an indictment from Idaho and a Rule 40 hearing in western Arkansas. And BOP is, to a degree, the subject matter expert, and by a Rule 40 hearing, counsel argues that a Rule 40 hearing will never occur if there is a writ. I don't think that's exactly correct. If there is a writ of ad prosecutum issued, there does not have to be a Rule 40 hearing. But that doesn't necessarily say that there isn't a Rule 40 hearing performed when there is a writ. And why is that so is because the nature of how the state, so what Robin Teeters is looking at is the defendant is in state of Arkansas custody. And there's an arrest warrant and indictment. And there has to be some legal vehicle to get Mr. Wiseman out of state custody and over to the federal courthouse. And the legal vehicle to do that is a writ of habeas corpus. So when she's looking at the Rule 40 hearing along with the arrest and the indictment and her experience in reviewing these type of records, what I believe supports her assertion in the affidavit is exactly that. He has to get from there, from the state of Arkansas custody, over to the Western Arkansas District Court. Now normally, you know, and another example of that is, well, commonly how that comes up is, you know, for example, in, sorry, I lost, well, let's compare it to. It sounds like what you're saying, Mr. Westphal, is that the ordinary course here would be to get such a writ. Exactly. So maybe the BOP person assumed there was a writ because that's how it normally would work. But what if the record doesn't include one? Is it clear error to find that there was such a writ? I don't believe there is because the clear error standard is the record in front of Judge Eppinger when she's looking at this, there has to be a definite and firm conviction that a mistake was made. And that cannot be from just the mere absence. It doesn't occur. The writ is not on the record. It's not a definite and firm conviction that a mistake was made. Normally, you know, the only other way for a defendant to get over there is if the state of Arkansas dismisses the charges, releases him on bond, he gets paroled or his sentence expires. And that's something this court has cited when we're looking at the intent to relinquish. And then those things occur. So in order for Mr. Wiseman to get from the state of Arkansas custody over to the western Arkansas courthouse, a writ was a way to accomplish that. When he got to the courthouse, the rule forwarded hearing just basically confirmed that. I think that is what the court or what Robin Teeters is looking at in making that conclusion. There are other things that support that are consistent with the fact that the writ existed in the record. As counsel noted, there is this reference in the USM 129. It's in appendix 31 about this. It's RWHCAP, police writ of habeas corpus at prosecution. Counsel claims that it's altered, which is just pure speculation. It's entered on 1022 of 1997. So that proposes with no proof whatsoever some conspiracy that back in 1997 that they entered that for the sole purpose of trying to cover up with the BOP that they were frustrated and just wanted to get rid of him. I think what's also important... If there was no writ, why does that necessarily show... I mean, even if there was no writ, couldn't it have been a mistake that they moved him over without the writ? Well, that always is. Intending to release jurisdiction if they didn't parole him or otherwise end his sentence? Well, it's always possible. The problem is now trying to reconstruct that 23 years later from records that may not even... They might have existed in 1997, but they don't exist anymore is difficult. So you just say produce the writ is not necessarily an answer to the question. That wasn't my question. I was saying even if you couldn't produce the writ, how does that show that Arkansas gave up jurisdiction? Well, I think then some of the other cases, and I think even the Weeks case, which defense relies on, don't necessarily say that the writ of ad prosecution is the end of the analysis. Arkansas has primary jurisdiction until there's evidence of their intent to relinquish that. In this court's case in Cole, they found that that primary jurisdiction can be relinquished by the things I said before, release on bail, dismissal, parole, expiration. Weeks actually looked at the writ of habeas not being there, but also in Weeks what is different here is there was other evidence of intent by, in that case I believe Idaho, to relinquish jurisdiction. They had issued a state writ to get him over there for a probation violation. There was a state court on that judgment on that probation violation that ran, stated they would run a concurrent with the later federal sentence. And then Idaho later lodged a detainer themselves on the federal government. So I think there's other evidence in this record, even if the writ did or did not exist, that shows that Arkansas did not intend to relinquish their primary jurisdiction. I see my time is up. All right. Seeing no further questions, we thank you for your argument. Thank you. We'll hear from Ms. Quick in rebuttal. You're going to have to turn your microphone on for us to hear you. My apologies. First to address whether it was a mistake for him to be transferred without a writ, 10th Circuit case we cite, the Sterling case, indicates you have to presume that officers walked lawfully and properly. So if there's a transfer without a writ, you have to assume that they were doing that because they were waiving primary jurisdiction. And I want to draw a distinction because counsel talked about ordinary course, they'd get a writ, and then they'd go back for state. That usually happens when someone is on state charges that are pending, and then they get a writ to charge them with something federally, and then they have to go back to state court. Now, sure, sometimes when someone's been sentenced in state court, they'll still get a writ, and then to go up to be charged with whatever federal offense. But sometimes they don't because, as a former state prosecutor, they don't want to deal with it if they know they're getting a bunch of time in the federal system. So the fact that there isn't a writ is highly, highly indicative of the fact that Arkansas wanted to waive primary jurisdiction. And finally, just... Can a state just waive primary jurisdiction by just... How would it even happen? They would just say, take this guy over to the federal court and let him go, and there'd be no paperwork that shows that he's been discharged from state prison? Wouldn't there have to be some documentation of that? No, Your Honor, I don't believe so. I think the fact that they let him go without a writ is an indication that they were waiving primary jurisdiction. And the reason that they could do that, as discussed in the trial case cited in the brief, is because they just wanted it to run concurrent. They didn't want to mess with it if they knew he was getting these federal time. And we have to look at what occurred at that moment under the Pope v. Perdue case to indicate what the intent was, not what the BOP says after that. You're saying that's how it happens? The jailer just decides we're going to drop him off at federal court and that'll be the end of it? From my understanding and from my reading of the cases, you don't really see documents like that. And that's why the writ is so important. Because if there is no writ, that's what triggers this presumption that they're doing things properly. So if they're doing it without a writ, that there's a reason. And the reason is that they want to waive primary jurisdiction and turn him over to the feds. Never seen, granted in Iowa we don't have these cases very often, but I've never seen in the cases I've reviewed any kind of document that the state is officially saying, here, you can have him. We don't care at this point. Or necessarily parole him or anything like that. And I would just note, the government can't be an ostrich with its head in the sand. They can't rely on this writ. I mean, they need to produce it if it exists. If not, they shouldn't be relying on an incorrect factual finding. If there are no further questions, I would ask this court to reverse for the reasons discussed in the brief. All right. Very well. Thank you both for your arguments. The case is submitted and the court will file an opinion in due course.